[Cite as *State v. Gaffin*, 2021-Ohio-2659.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
ADAMS COUNTY

STATE OF OHIO,                          :

    Plaintiff-Appellee,              :          Case No. 20CA1115

    v.                               :

                                     :          <u>DECISION AND JUDGMENT</u>
KEVIN GAFFIN,                           :          <u>ENTRY</u>

    Defendant-Appellant.             :

_____
APPEARANCES:

William R. Gallagher, Elizabeth Conkin, Arenstein & Gallagher, Cincinnati, Ohio, for Appellant.

D. Vincent Faris, Clermont County Prosecutor, Nick Horton, Scott O'Reilly, Assistant Prosecuting Attorneys, Batavia, Ohio, for Appellee.

_____

Smith, P. J.

{¶1} Kevin Gaffin appeals the Decision and Final Judgment Entry Denying Petition for Postconviction Relief of the Adams County Common Pleas Court, entered May 4, 2020. Gaffin asserts the trial court abused its discretion by failing to adhere to the law of the case doctrine, in contravention of this court's decision in *State v. Gaffin,* 4th Dist. Adams No. 17CA1057, 2019-Ohio-291, affirmed in part and reversed in part. Gaffin further asserts that the trial court failed to objectively review his petition and

the witnesses' testimony, demonstrating bias, and thereby compromising the integrity of the postconviction hearing and the court's final decision on his petition. Upon review, we find no merit to Appellant's arguments. Accordingly, we overrule the assignments of error and affirm the judgment of the trial court.

## FACTUAL AND PROCEDURAL BACKGROUND

{¶2} Mr. Gaffin, "Appellant," was indicted in 2015 on seven counts: three counts of rape, R.C. 2907.02(A)(1)(b), each felonies of the first degree; three counts of sexual battery, R.C. 2907.03(A)(5); each felonies of the second degree, with specifications; and one count of felonious assault, R.C. 2903.11(A)(1), a felony of the second degree. The alleged victim was his stepson, R.A. The underlying facts adduced at trial are set forth fully in *State v. Gaffin,* 4th Dist. Adams No. 16CA1027, 2017-Ohio-2935, ¶¶ 4-15, "*Gaffin I.*"

{¶3} Appellant filed a petition for postconviction relief which the trial court dismissed without conducting an evidentiary hearing. Appellant challenged the trial court's dismissal of his petition in *State v. Gaffin,* 4th Dist. Adams No. 17CA1057, 2019-Ohio-291, "*Gaffin II.*" In *Gaffin II,* Appellant presented three assignments of error. First, Appellant asserted that the trial court violated his right to due process under the United States

and Ohio Constitutions when it dismissed his postconviction petition

without conducting an evidentiary hearing.  Next, Appellant asserted the

trial court violated his right to due process under the United States and Ohio

Constitutions when it dismissed his own affidavit attached to his petition as

self-serving and not credible.  Finally, Appellant asserted that the trial court

violated his right to due process under the United States and Ohio

Constitutions when it denied his petition, as it contained a sufficient

constitutional claim of ineffective assistance of trial counsel and was

supported by adequate documentary evidence to warrant vacation of his

conviction and sentence.

{¶4} Upon review, we found the trial court did abuse its discretion in

dismissing Appellant's petition without an evidentiary hearing.

Accordingly, we sustained the first assignment of error and the third

assignment of error in part.  We overruled the second assignment of error.

{¶5} When resolving Appellant's third assignment of error in

*Gaffin II,* we found as follows at ¶ 78:

> After reviewing the eight listed affidavits, we find that
> the trial court erred in finding that certain portions of
> specific affidavits would have been inadmissible under
> Evid.R. 608(B). Specifically, we find that the trial court
> improperly found that the statements made in *Decker's,*
> *Bowling's, and Malott's* affidavits were inadmissible

under Evid.R. 608(B).[1]  (Emphasis added).  Accordingly, we find that this portion of Gaffin's third assignment of error is sustained in part and overruled in part.

{¶6} We further opined in *Gaffin II* at ¶ 88:

[I]n light of the admissible evidence Gaffin provided, we find that there is a reasonable probability that the jury would have returned a different verdict.  Had the jury heard the witnesses' testimony, especially that of the two officers from the Manchester Police Department, it is reasonably likely that the outcome of the trial would have been different.

{¶7} Finally, in *Gaffin II* at ¶ 90, we concluded:

Based on the foregoing reasons, we find that the trial court abused its discretion in denying Gaffin's petition for postconviction relief without a hearing.  Having sustained Gaffin's first assignment of error, * * * and sustained in part his third assignment of error, we remand the matter to the trial court to conduct an evidentiary hearing on Gaffin's postconviction relief consistent with this opinion.

{¶8} Pursuant to this court's mandate in *Gaffin II,* the trial court conducted the evidentiary hearing on October 15, 2019.  Appellant presented the following witnesses:  Tyler Cantrell, Appellant's original trial attorney; Jimmy Vaughn, Appellant's friend; Mike Decker, Appellant's friend and co-worker; Officer Jeff Bowling; Officer Jason Malott; and Bruce England, a former investigator with Adams County Children's Services (ACCS).  At the

---

[1] In *Gaffin II,* we found at ¶ 57, that the testimony Jimmy Vaughn would have supplied would be admissible.  In *Gaffin II* at ¶ 61, we found that the testimony of Mike Decker would be inadmissible.  Therefore, we conclude herein that the trial court's holding in ¶ 78 naming Decker instead of Vaughn is a scrivener's error.

conclusion of the hearing, the trial court ordered that a transcript of the proceedings be prepared and filed. The parties also filed memoranda of their closing arguments, pursuant to a briefing schedule order.

{¶9} Thereafter, in the May 4, 2020 entry, the trial court once again overruled Appellant's postconviction petition. This timely appeal followed.

ASSIGNMENTS OF ERROR

I. THE TRIAL ABUSED ITS DISCRETION WHEN IT REFUSED TO FOLLOW THE LAW OF THE CASE, BY FINDING MR. GAFFIN DID NOT PROVE HIS TRIAL COUNSEL FAILED TO FUNCTION AS COUNSEL AS GUARANTEED BY THE SIXTH AMENDMENT, THEREBY VIOLATING MR. GAFFIN'S CONSTITUTIONAL RIGHT TO DUE PROCESS.

II. THE TRIAL COURT ABUSED ITS DISCRETION WHEN IT REFUSED TO FOLLOW THE LAW OF THE CASE, BY FINDING MR. GAFFIN SUFFERED NO PREJUDICE WHERE THE EVIDENCE ADDUCED AT THE HEARING WAS SUBSTANTIALLY THE SAME AS THE AVERMENTS CONTAINED IN THE AFFIDAVITS, THEREBY VIOLATING MR. GAFFIN'S CONSTITUTIONAL RIGHT TO DUE PROCESS.

III. THE TRIAL COURT DID NOT REVIEW MR. GAFFIN'S PETITION, NOR THE WITNESSES' TESTIMONY, OBJECTIVELY, THEREBY COMPROMISING THE INTEGRITY OF THE PROCEEDING AND DEPRIVING MR. GAFFIN

HIS CONSTITUTIONAL RIGHT TO DUE
PROCESS.

A.  STANDARD OF REVIEW AND GUIDING PRINCIPLES

1.  <u>The postconviction relief process.</u>

{¶10} The postconviction relief process is a collateral civil attack on a criminal judgment rather than an appeal of the judgment. *See State v. Betts,* 4th Dist. Vinton No. 18CA710, 2018-Ohio-2720, at ¶ 11; *State v. Calhoun*, 86 Ohio St.3d 279, 281, 714 N.E.2d 905 (1999).  Postconviction relief is not a constitutional right; instead, it is a narrow remedy that gives the petitioner no more rights than those granted by statute. *Id.*  It is a means to resolve constitutional claims that cannot be addressed on direct appeal because the evidence supporting the claims is not contained in the record. *See State v. McDougald*, 4th Dist. Scioto No. 16CA3736, 2016-Ohio-5080, ¶ 19-20, citing *State v. Knauff,* 4th Dist. Adams No. 13CA976, 2014-Ohio-308, ¶ 18.

{¶11} " '[A] trial court's decision granting or denying a postconviction relief petition filed pursuant to R.C. 2953.21 should be upheld absent an abuse of discretion; a reviewing court should not overrule the trial court's finding on a petition for postconviction relief that is supported by competent and credible evidence.' " *Betts, supra*, at ¶ 12, quoting *State v. Gondor,* 112 Ohio St.3d 377, 2006-Ohio-

6679, 860 N.E.2d 77, ¶ 58.  A trial court abuses its discretion when its decision is unreasonable, arbitrary, or unconscionable.  *See In re H.V.,* 138 Ohio St.3d 408, 2014-Ohio-812, 7 N.E.3d 1173, ¶ 8.

{¶12} As indicated above, Appellant's postconviction petition was originally denied without a hearing.  *See Gaffin II,* at ¶ 2.  In *Gaffin II*, we recognized that a petitioner seeking postconviction relief is not automatically entitled to an evidentiary hearing.  *Id*. at ¶ 22.  *See Betts, supra,* at ¶ 13, citing *State v. Black,* 4th Dist. Ross No. 15CA3509, 2016-Ohio-3104, ¶ 9, citing *State v. Calhoun,* 86 Ohio St.3d 279, 282, 714 N.E.2d 905 (1999); *State v. Slagle,* 4th Dist. Highland No. 11CA22, 2012-Ohio-1936, ¶ 13.  Rather, before granting a hearing on a petition, the trial court must first determine that substantive grounds for relief exist.  R.C. 2953.21(C). "Substantive grounds for relief exist and a hearing is warranted if the petitioner produces sufficient credible evidence that demonstrates the petitioner suffered a violation of the petitioner's constitutional rights." *In re B.C.S.,* 4th Dist. Washington No. 07CA60, 2008-Ohio-5771, ¶ 11.  Furthermore, in order to merit a hearing, the petitioner must show that the claimed "errors resulted in prejudice."  *Id*., quoting *Calhoun* at 283.

2.  Ineffective assistance of counsel claims within the context of the postconviction process.

{¶13} The Second District recently considered the denial of a postconviction petition raising four ineffective assistance of counsel claims in *State v. Crossley*, 2d Dist. Clark No. 2020-CA-10, 2020-Ohio- 6640. In considering Crossley's first and second assignments of error, the appellate court recognized the proper standard for analysis of ineffective assistance claims as set forth in *Strickland v. Washington,* 104 S. Ct. 2052, 466 U.S. 668, 688 (1984):

> To establish ineffective assistance of counsel, a defendant must demonstrate both that trial counsel's conduct fell below an objective standard of reasonableness and that the errors were serious enough to create a reasonable probability that, but for the errors, the outcome of the case would have been different. (Internal citations omitted.) See *Crossley,* at ¶ 25. Relevant to Appellant's current appeal, we note that: " 'In a petition for postconviction relief, which asserts ineffective assistance of counsel, the petitioner bears the *initial burden* to submit evidentiary documents containing sufficient operative facts to demonstrate the lack of competent counsel and that the defense was prejudiced by counsel's ineffectiveness.' " (Emphasis added.) *State v. Kapper,* 5 Ohio St.3d 36, 38, 448 N.E.2d 823 (1983), quoting *State v. Jackson,* 64 Ohio St.2d 107, 413 N.E.2d 819 (1980), syllabus.

*See also State v. Crossley, supra,* at ¶ 26, and *State v. Wright,* 4th Dist. Washington No. 06CA18, 2006-Ohio-7100, at ¶ 20.[2]

3.  <u>The doctrine of res judicata.</u>

---

[2] In the context of a petition asserting ineffective assistance of counsel, " 'the petitioner bears the initial burden to submit evidentiary documents containing sufficient operative facts to demonstrate the lack of competent counsel and that the defense was prejudiced by counsel's ineffectiveness.' " *Wright, supra*, at ¶ 20, quoting *Jackson* at the syllabus.

{¶14} We are further mindful that under the doctrine of res judicata, " ' "[a] valid, final judgment rendered upon the merits bars all subsequent actions based upon any claim arising out of the transaction or occurrence that was the subject matter of the previous action." ' " *State v. Weber,* 2d Dist. Montgomery No. 28721, 2020-Ohio-4851, at ¶ 14, quoting *State ex rel. O'Malley v. Russo,* 156 Ohio St.3d 548, 2019-Ohio-1698, 130 N.E.3d 256, ¶ 27, quoting *Grava v. Parkman Twp.,* 73 Ohio St.3d 379, 653 N.E.2d 226, (1995), syllabus. " '[T]he doctrine serves to preclude a defendant who has had his day in court from seeking a second on that same issue. In so doing, res judicata promotes the principles of finality and judicial economy by preventing endless relitigation of an issue on which a defendant has already received a full and fair opportunity to be heard.' " (Citation omitted.) *Weber, supra,* quoting *State v. Saxon,* 109 Ohio St.3d 176, 2006-Ohio-1245, 846 N.E.2d 824, ¶ 18.

{¶15} Accordingly, res judicata operates to bar claims that are raised in successive petitions for postconviction relief when the trial court has already ruled on the same claims in prior postconviction proceedings. *See Weber, supra,* at ¶ 15; *State v. Tucker,* 2d Dist. Darke No. CA 1181, 1988 WL 38147, *3 (Apr. 18, 1988). " * * * [I]f the claims brought in a second petition for postconviction relief are ones that were or could have been

brought in an earlier petition for postconviction relief, a trial court does not abuse its discretion in denying the second petition for postconviction relief on the basis of res judicata." (Citation omitted.) *Weber, supra,* quoting *State v. Finfrock*, 2d Dist. Montgomery No. 16944, 1998 WL 726478, *5 (Oct. 16, 1998). *Accord State v. Waver,* 8th Dist. Cuyahoga No. 108820, 2020-Ohio-2724, ¶ 32. We note generally here, as we noted specifically in *Gaffin II* at ¶ 41, that an appellant does not get a "second bite at the apple" in a postconviction proceeding when presenting arguments previously raised in a direct appeal.

    4.  <u>Law of the case doctrine.</u>

{¶16} Appellant's first and second assignments of error in the current appeal assert that the trial court failed to apply the "law of the case" doctrine in considering the evidence at the hearing and denying his petition. Proper application of the law of the case doctrine presents a question of law; therefore, we apply a de novo review standard. *See Giancola v. Azem,* 153 Ohio St. 3d 594, 2018-Ohio-1694, 109 N.E.3d 1194, at ¶ 13; *Arnott v. Arnott,* 132 Ohio St.3d 401, 2012-Ohio-3208, 972 N.E.2d 586, ¶ 17. With these principles in mind, we turn to consideration of Appellant's first and second assignments of error. Because the issues in these assignments of error are interrelated, we will consider them jointly.

## B. LEGAL ANALYSIS

1. Assignment of Error One:  Did the trial court abuse its discretion by failing to follow the law of the case and by finding Appellant did not prove his trial counsel failed to function as counsel?

{¶17} Appellant begins by observing that this court's sole purpose in remanding his petition for an evidentiary hearing was to allow him to further develop the substance of his witnesses' testimony and demonstrate how the failure to call the witnesses at trial was prejudicial.  However, Appellant asserts that the issue of whether he received ineffective assistance of counsel was decided in the affirmative by this court and has thus become the law of the case.  Appellant concludes that when the trial court found in the May 4, 2020 decision that Appellant did not prove deficient performance of his counsel, the trial court failed to follow the law of the case and thereby abused its discretion.

2. Assignment of Error Two:  Did the trial court abuse its discretion by failing to follow the law of the case and by finding Appellant failed to demonstrate prejudice?

{¶18} Under the second assignment of error Appellant asserts that this court definitively held that he received constitutionally ineffective assistance of counsel.  Furthermore, Appellant directs us to this court's holding that "we find that there is a reasonable probability that the jury would have returned a different verdict." *Gaffin II,* at ¶ 88.  Therefore, Appellant

concludes that at the evidentiary hearing following remand, where the trial court was confronted with substantially the same facts and issues as were involved in the prior appeal, the court was bound to adhere to the appellate court's determination of the applicable law. In the May 4, 2020 decision, the trial court found Appellant did not demonstrate prejudice from the trial court's decision to not allow Appellant's postconviction hearing witnesses to testify at the trial. Appellant contends that this was another instance of failure to follow the law of the case doctrine and was also an abuse of the court's discretion.

{¶19} The law of the case doctrine has long existed in Ohio jurisprudence. *See Giancola, supra,* 2018-Ohio-1694, 109 N.E.3d 1194, at ¶ 14. " 'The doctrine provides that the decision of a reviewing court in a case remains the law of that case on the legal questions involved for all subsequent proceedings in the case at both the trial and reviewing levels.' " *Hopkins v. Dyer,* 104 Ohio St.3d 461, 2004-Ohio-6769, 820 N.E.2d 329, ¶ 15, quoting *Nolan v. Nolan,* 11 Ohio St.3d 1, 3, 462 N.E.2d 410 (1984). "The * * * doctrine is necessary to ensure consistency of results in a case, to avoid endless litigation by settling the issues, and to preserve the structure of superior and inferior courts as designed by the Ohio Constitution." *Id.*

{¶20} Although the law of the case doctrine generally is "a rule of practice rather than a binding rule of substantive law," *Nolan* at 3, 462 N.E.2d 410, we have also explained that "the Ohio Constitution 'does not grant to a court of common pleas jurisdiction to review a prior mandate of a court of appeals.' " *Giancola,* at ¶ 15; *State ex rel. Cordray v. Marshall,* 123 Ohio St.3d 229, 2009-Ohio-4986, 915 N.E.2d 633, ¶ 32, quoting *State ex rel. Potain v. Mathews,* 59 Ohio St.2d 29, 32, 391 N.E.2d 343 (1979). The doctrine therefore "functions to compel trial courts to follow the mandates of reviewing courts," *Nolan* at 3, 462 N.E.2d 410, and "[a]bsent extraordinary circumstances, such as an intervening decision by the Supreme Court, an inferior court has no discretion to disregard the mandate of a superior court in a prior appeal in the same case." *Id*. at the syllabus. *See Giancola, supra.*

{¶21} Accordingly, a trial court is without authority to extend or vary the mandate issued by a superior court, and "where at a rehearing following remand a trial court is confronted with substantially the same facts and issues as were involved in the prior appeal, the court is bound to adhere to the appellate court's determination of the applicable law." *Id.* at 3, 462 N.E.2d 410, *Giancola, supra*, at ¶ 16. However, as the United States Supreme Court has explained, "[t]he doctrine of law of the case comes into play only with respect to issues previously determined," *Quern v. Jordan,*

440 U.S. 332, 347, 99 S.Ct. 1139 (1979), fn. 18, and " '[w]hile a mandate is controlling as to matters within its compass, on the remand a lower court is free as to other issues.' " *Id*., quoting *Sprague v. Ticonic Natl. Bank, 307 U.S. 161, 168, 59 S.Ct. 777 (1939)*.

{¶22} Appellant's argument is based upon the language used when rendering our decision in *Gaffin II*.  In *Gaffin II,* at ¶ 88, we wrote:

> After reviewing the evidence, we find that Gaffin established that he received constitutionally ineffective assistance of counsel.  First Gaffin showed that his trial counsel's performance fell below an objective level of reasonable representation. * * * Here, Gaffin's trial counsel not only failed to call a majority of the witnesses he subpoenaed, the affidavits show that he failed to interview nearly ten of those individuals. * * * Second, in light of the admissible evidence Gaffin provided, we find that there is a reasonable probability that the jury would have returned a different verdict.  Had the jury heard the witnesses' testimony, especially that of the two officers from the Manchester Police Department, it is reasonably likely that the outcome of the trial would have been different.

{¶23} Appellant raised the law of the case doctrine argument in the post-evidentiary hearing briefing.  The trial court, in its May 4, 2020 decision, began by addressing this argument.  The trial court pointed out that Appellant's original assignment of error was that the court erred in dismissing his petition without granting a hearing on the ineffective assistance of counsel claim, and "*not whether that was actually proven*."

(Emphasis added.) The trial court noted that if Appellant's argument had merit, then this appellate court would not have ruled as it did in *Gaffin II* at ¶ 90, that the error of the court was the failure to conduct the hearing and by further remanding the case with the direction to conduct the evidentiary hearing. "Rather, it would have granted the petition, reversed the conviction, and remanded the case back to the trial court for further proceedings including a new trial."[3] The trial court overruled the law of the case claim. For the reasons which follow, we agree with the trial court's analysis.

{¶24} We quoted *Crossley* earlier at ¶ 13, in our discussion of a petitioner's "initial burden" when raising an ineffective assistance of counsel claim. The language quoted by *Crossley* is from the Supreme Court of Ohio's decision in *Jackson,* which we also quoted at ¶ 13. *Jackson* explicitly noted that this initial burden must be met *before a hearing is granted.* (Emphasis added.)

{¶25} The language in *Jackson* and *Crossley* is admittedly more precise than the language we utilized in *Gaffin II*. While in *Gaffin II* we discussed the proper *Strickland* analysis at ¶ 83, we did not specifically

---

[3] For example, *see State v. Brant,* 11th Dist. Portage no. 99-P-0037, 2000 WL 1114845 (Aug. 4. 2000). On appeal of denial of postconviction petition after remand hearing, Brant's assignment of error asserted that trial court erred because Brant had stated a prima facie case of ineffective assistance of counsel. The 11th District's opinion explicitly found that counsel's failure to call an available expert witness fell below the objective standard of reasonable representation and also concluded counsel's errors were prejudicial. The judgment of the trial court was reversed and the matter remanded for a new trial.

discuss postconviction petitions in the context of ineffective assistance claims, nor did we discuss the petitioner's "initial burden" except in a general manner relating to the determination of "substantive grounds for relief." *Gaffin II* at ¶ 82.

{¶26} However, it should be quite clear that Appellant faced only an initial burden to establish sufficient operative facts to demonstrate both that counsel's assistance was deficient and that he was prejudiced by counsel's assistance in order to merit an evidentiary hearing.

{¶27} A similar law of the case argument as raised here by Appellant was also considered in *State v. Jones,* 9th Dist. Summit No. 28063, 2019-Ohio-289. Jones appealed the second denial of his petition for postconviction relief claiming ineffective assistance after remand for an evidentiary hearing. Jones asserted that under the "law of [the] case, defense counsel's performance was deficient." Jones based his argument on a statement in his prior appeal where the appellate court stated: "[i]f Mr. Jones's defense team did not do much mitigation investigation by the time the trial started, they could not have formed an appropriate trial or mitigation theory." In resolving Jones' appeal on this basis, the Ninth District noted:

> Jones's argument that this Court's 'if' statement is law of the case asks us to disassociate that statement not only from the rest of the paragraph in which it is contained, but also from our entire decision. *Id*. at ¶ 15.

{¶28} The *Jones* court concluded:

[T]he 'if' statement and the entire paragraph in which it is contained are not necessary to the holding in *Jones II* wherein we concluded that the trial court had improperly denied Jones's petition for postconviction relief without first holding a hearing. As such, the entire paragraph is dicta intended to give guidance to the trial court upon remand. 'Dicta is not authoritative, and, by definition, cannot be the binding law of the case.' *Gissiner v. Cincinnati,* 1st Dist. Hamilton No. C-070536, 2008-Ohio-3161, ¶ 15. Accordingly, the law of the case doctrine does not require us to conclude the defense counsel's performance was deficient.

*Id*. at ¶ 16.

{¶29} As in *Brant, supra,* our decision in *Gaffin II* used language which did not mention Appellant's "initial burden" within the context of an ineffective assistance of counsel claim. We found "that Gaffin established that he received constitutionally ineffective assistance of counsel." We also found that "it is reasonably likely that the outcome of the trial would have been different." *Id*. at ¶ 88. However, we further found that "[b]ecause Gaffin provided sufficient evidence in his petition for postconviction relief to satisfy both prongs of an ineffective assistance of counsel claim, we find that any rational court would have found substantive grounds for relief existed and granted an evidentiary hearing." Interpreting our decision as having found the trial court found "ineffective assistance" to be the law of

the case going forward asks this court, as in *Jones*, to disassociate our discussion from the final paragraph and disposition of *Gaffin II*, which states: "Based on the foregoing reasons, we find that the trial court abused its discretion in denying Gaffin's petition for postconviction relief without a hearing. * * * [W]e remand the matter to the trial court to conduct an evidentiary hearing on Gaffin's petition for postconviction relief consistent with this opinion." *Id.* at ¶ 90. If we intended to find as the law of the case that Appellant had established his ineffective assistance claim, we would have reversed the trial court's judgment and remanded for a new trial, as the court did in *Brant,* rather than remanding for the evidentiary hearing.

{¶30} It would have been preferable if our language in *Gaffin II* utilized the more explicit language of *Jackson, Wright,* and *Crossley* in discussing an appellant's initial burden in asserting ineffective assistance of counsel claims in the context of postconviction proceedings. However, given our additional finding that "any rational trial court would have found substantive grounds for relief existed and granted an evidentiary hearing," it is simply illogical at best or disingenuous at worst to conclude that our decision in *Gaffin II* unequivocally found that Appellant established a prima

facie case of ineffective assistance of counsel and thus became the law of the case.[4]  We find no merit to Appellant's law of the case argument.

{¶31} Finally, under the first assignment of error, Appellant relies solely on his argument that the law of the case doctrine applies to establish deficiency, the first prong of his ineffective assistance claim.  While Appellant opens his brief by lengthy introduction of the background and procedural posture of the case, as well as discussion of our decision in *Gaffin II,* Appellant does not make additional argument regarding the alleged deficiency of his trial counsel.  We will not "further address this 'undeveloped argument or assume Appellant's duty and formulate the argument for him.' "  *See State v. Dailey,* 4th Dist. Adams No. 18CA1059, 2018-Ohio-4315, at ¶ 44, quoting *State v. Palmer,* 9th Dist. Summit No. 28303, 2017-Ohio-2639, at ¶ 33.[5]

---

[4] We further observe that at the bottom of Page 10 of Appellant's brief, Appellant argues: "The Fourth District's SOLE purpose in remanding the case for an evidentiary hearing was to allow Mr. Gaffin 'to further develop the substance of said witnesses' testimony and demonstrate how the failure to call said witnesses at trial was PREJUDICIAL." *Id*. (Emphasis added).  At no point in its decision did the Fourth District state or suggest its finding Mr. Gaffin received ineffective assistance of counsel was up for discussion."  First, here the brief inexplicably contradicts itself by having argued that both prongs of the ineffective assistance of counsel claim, deficient performance and prejudice, were found by the Fourth District, but somehow yet arguing that the matter was remanded to consider the issue of prejudice.  Second, the "*id*.," citation seems to specifically reference this court's remand instruction in *Gaffin II* at ¶ 88.  However, a closer reading demonstrates that the purported reference to *Gaffin II* at ¶ 88 is actually a reference to another decision this court referenced in *Gaffin II, State v. Erwin*, 5th Dist. Licking No. 95CA82, 1996 WL 363815, *5 (June 10, 1996).  This error is confusing in light of the same citation at the bottom of page 16 which properly credits the *Erwin* case.

[5] Under App.R. 16(A)(7), an appellant's brief shall include "[a]n argument containing the contentions of the appellant with respect to each assignment of error presented for review and the reasons in support of the contentions, with citations to the authorities, statutes, and parts of the record on which appellant relies."  Appellate courts do not have any duty "to root out" an argument in support of an assignment of error.

{¶32} As to Appellant's second assignment of error, again he relies chiefly on his argument that the trial court failed to apply the law of the case doctrine at the evidentiary hearing when the court declined to find Appellant was prejudiced by his trial counsel's representation. To some degree, Appellant does recite the evidence presented at the hearing. However, Appellant continues to base his argument on the trial court's failure to apply the law of the case doctrine, arguing as follows:

> Each of Mr. Gaffin's witnesses testified to substantially the same facts as were contained in their affidavits. The state's cross-examination did not negate this. Where the trial court was confronted with substantially the same facts and issues as were involved in the prior appeal, the court is bound to adhere to the appellate court's determination of the applicable law. Moreover, the trial court is without authority to vary the mandate given. (Internal citations omitted.) Despite the trial court's claim to the contrary, the Fourth District's decision in this case IS the law of the case, and the trial court was obligated to give that decision effect in reaching its decision regarding Mr. Gaffin's Postconviction Petition.

{¶33} It is well established that, involving claims of ineffective assistance of counsel, the " '[f]ailure to establish either element is fatal to the claim.' " *State v. Bradford,* 4th Dist. Adams No. 20CA1109, 2020-Ohio-4563, at ¶ 17, quoting *State v. Jones,* 4th Dist. Scioto No. 06CA3116, 2008-Ohio-968, ¶ 14. Therefore, if one element is dispositive, a court need not

---

*Dailey, supra*, at ¶ 43, quoting, *Prokos v. Hines,* 4th Dist. Athens Nos. 10CA51 and Athens Nos. 10CA57, 2014-Ohio-1415, at ¶ 55.

analyze both. *See State v. Madrigal,* 87 Ohio St.3d 378, 389, 721 N.E.2d 52

(2000) (stating that a defendant's failure to satisfy one of the ineffective-

assistance-of-counsel elements "negates a court's need to consider the

other").

{¶34} Consequently, in this case, having found Appellant's claim that

his trial counsel's performance was deficient as having no merit, we need

not consider whether Appellant was prejudiced by counsel's representation.

{¶35} However, we would also emphasize that in this case, the

hearing took place on October 15, 2019.  The trial court's decision, a 24-

page document with findings of fact and conclusions of law, was rendered

May 4, 2020.  This delay indicates the trial court carefully reviewed the

matter and took time to carefully analyze the issues presented.  Notably, the

trial court's decision states that the court ordered a transcript of the

proceedings and "carefully reviewed the transcript of the October 15th

hearing as well as the transcript of the trial" and also reviewed the "DVD

recording of the interview of R.A. at the Mayerson Center which was an

exhibit in the trial."  In the May 4th decision, the trial court set forth

summaries of his review of the witnesses whose testimony was most

relevant to the issues.  We have likewise comprehensively reviewed the

record and the testimony of the witnesses at trial.

{¶36} In analyzing Appellant's ineffective assistance claim in the May 4, 2020 decision, the trial court discussed Appellant's initial argument that the trial court failed to adequately investigate those witnesses whose names were given to him and who were subpoenaed for trial. However, the trial court distinguished that at the evidentiary hearing, the evidence offered through the witnesses called consisted solely of testimony thought to impeach the testimony of R.A. and his mother Brianna. The trial court found it necessary to evaluate the testimony together with all the evidence at trial to determine if trial counsel's performance was deficient or if it was sound trial strategy. The trial court ultimately concluded that the trial testimony and exhibits did not show that counsel's decision against calling other witnesses was not sound trial strategy.

{¶37} Our remand was specific. In *Gaffin II,* we found that the trial court improperly applied Evid.R. 608(B) to find certain evidence inadmissible. In *Gaffin II,* the trial court was mandated to conduct an evidentiary hearing consistent with our opinion, and "[i]n light of the admissible evidence Gaffin provided * * *, and especially that of the two officers of the Manchester Police Department * * *." *Id* at ¶ 88. As will be discussed further in this opinion, the admissible testimony as outlined in *Gaffin II* actually consisted of testimony from only three witnesses—Jimmy

Vaughn, Officer Bowling, and Officer Malott. In the May 4, 2020 decision, the trial court discussed additional reasons for its finding these proffered testimonies are inadmissible, and we will discuss these below as well. Even if we had considered Appellant's arguments in the first and second assignments of error outside of the law of the case framework, we would agree with the trial court's conclusion that trial counsel's performance was not deficient and the above witnesses' testimonies would not have changed the outcome of the trial.

{¶38} Based on the foregoing, we find no merit to Appellant's first and second assignments of error. Accordingly, both assignments of error are hereby overruled.

3. Assignment of Error Three: Did the trial court abuse its discretion by failing to follow the law of the case by denying Appellant the opportunity to develop the substance of his witnesses' testimony?

{¶39} Given our resolution of the first and second assignments of error, the third assignment of error is arguably moot. However, in the interests of justice we will consider Appellant's arguments herein. Appellant argues that despite his repeated requests to "develop the substance of the witnesses' testimony," as ordered by the Fourth District, the trial court refused. Appellant contends that the trial court constrained his ability to develop the substance of his witnesses' testimony as ordered by this court

when the trial court limited the witnesses to testimony provided in the affidavits attached to Appellant's petition. By doing so, Appellant argues that the trial court refused to allow him to develop the testimony as ordered by this court and thus abused its discretion by failing to follow the law of the case.

{¶40} Before going further, we reiterate our explanation in *Gaffin II,* at ¶ 23, regarding the trial court's discretion in considering the credibility of witnesses' testimony in supporting affidavits:

> In determining whether substantive grounds for relief exist, a court must look at any supporting affidavits filed by the defendant. R.C. 2953.21(C); *In re B.C.S.* at ¶ 12. However, the court does not need to accept such affidavits as true. *Id.*, citing *Calhoun* at 284, 714 N.E.2d 905. A trial court should consider all relevant factors in assessing the credibility of affidavit testimony. *Calhoun* at 284-285, 714 N.E.2d 905. These factors include:
>
> (1) Whether the judge reviewing the postconviction relief petition also presided at the trial, (2) whether multiple affidavits contain nearly identical language, or otherwise appear to have been drafted by the same person, (3) whether the affidavits contain or rely on hearsay, (4) whether the affiants are relatives of the petitioner, or otherwise interested in the success of the petitioner's efforts, and (5) whether the affidavits contradict evidence proffered by the defense at trial. Moreover, a trial court may find sworn testimony in an affidavit to be contradicted by evidence in the record by the same witness, or to be internally inconsistent, thereby weakening the credibility of that testimony. *Id.* at 285, citing *State v. Moore,* 99 Ohio App.3d 748, 754-756, 651 N.E.2d 1319 (1st Dist.1994). "Depending on the record,

one or more of these or other factors may be sufficient to justify the conclusion that an affidavit asserting information outside the record lacks credibility." *Id*. at 285, 714 N.E.2d 905.

{¶41} Furthermore, before considering Appellant's argument, a review of our discussion of the proposed witnesses' testimony and a clarification of our decision in *Gaffin II* is necessary. Appellant's third assignment of error in *Gaffin II* was set forth at ¶ 19 as follows:

> THE TRIAL COURT VIOLATED MR. GAFFIN'S RIGHT TO DUE PROESS UNDER THE OHIO AND UNITED STATES' CONSTITUTIONS WHEN IT DENIED THE PETITION AS THE PETITION STATED SUFFICIENT CONSTITUTIONAL CLAIMS AND WAS SUPPORTED BY ADEQUATE DOCUMENTARY EVIDENCE TO WARRANT VACATION OF THE CONVICTION AND SENTENCE.

{¶42} In *Gaffin II,* we began consideration of Appellant's third assignment of error at ¶ 44. We construed Appellant's assignment of error as arguing that "the trial court erred in finding that, under Evid.R. 608(B), witnesses, whose affidavits referred to specific instances of conduct would be prohibited from testifying regarding such acts." Appellant contended that the trial court applied the wrong rule of evidence and asserted that the proposed testimony was permissible under Evid.R. 613(C). In *Gaffin II,* we set forth Evid.R. 608(B) as follows at ¶ 46:

Specific instances of the conduct of a witness, for the purpose of attacking or supporting the witness's character for truthfulness, other than conviction of crime as provided in Evid.R. 609, may not be proved by extrinsic evidence. They may, however, in the discretion of the court, if clearly probative of truthfulness or untruthfulness, be inquired into upon cross-examination of the witness (1) concerning the witness's character for truthfulness or untruthfulness, or (2) concerning the character for truthfulness or untruthfulness of another witness as to the character the witness being cross-examined has testified.

{¶43} In *Gaffin II,* we further discussed another method by which a party may impeach a witness pursuant to Evid.R. 613(C). At ¶ 48, we set forth the rule as follows:

During examination of a witness, conduct of the witness inconsistent with the witness's testimony may be shown to impeach. If offered for the sole purpose of impeaching the witness's testimony, extrinsic evidence of the prior inconsistent conduct is admissible under the same circumstances as provided for prior inconsistent statements by Evid. R. 613(B)(2).

{¶44} Importantly, in our decision in *Gaffin II,* we observed that the trial court listed eight witnesses whose affidavits contained statements that referred to specific instances of conduct by R.A. or his mother: Tyler Cantrell, Jimmy Vaughn, Mike Decker, Paula Gaffin, Brian Rau, Jeffrey Bowling, Jason Malott, and Josie Frances. *Id*. at ¶ 49. We reviewed each affidavit thoroughly and found the trial court correctly ruled as inadmissible the proposed testimony of Tyler Cantrell, Mike Decker, Paula Gaffin, Brian

Rau, and Josie Frances. *See* ¶¶ 52-77. However, as previously discussed at

¶ 5, we also noted that in *Gaffin II*, "the trial court improperly found that

statements made in *Decker's, Bowling's, and Mallott's* affidavits were

inadmissible under Evid.R. 608(B)." (Emphasis added.) *Id*. at ¶ 78. This

language is inexplicable as it relates to Mike Decker's testimony. We

discussed his affidavit at length in *Gaffin II* at ¶¶ 59-61. At ¶ 61, we found:

> [T]he trial court properly found that Decker's statement
> about R.A.'s mother's drinking habits was inadmissible
> under Evid.R. 608(B). Regarding Decker's statement
> about the hunting trip, we find that the trial court did not
> abuse its discretion in finding this portion of Decker's
> affidavit inadmissible for being remote.

{¶45} Our finding at ¶ 78 is also set forth erroneously in that we

discussed Jimmy Vaughn's testimony at length at ¶¶ 55-58. We concluded

at ¶ 58:

> R.A.'s mother testified regarding the events that occurred
> on Thanksgiving Day 2012, which she stated triggered
> the end of her marriage to Gaffin. * * * Vaughn could
> have been called to contest R.A.'s mother's ability to
> remember the events of that day. Therefore, we find that
> this portion of Vaughn's statement was admissible under
> Evid.R. 613(C) and Evid.R. 616(B).

{¶46} Thus, closer review of *Gaffin II* reveals that we specifically

found Decker's testimony inadmissible and Vaughn's testimony admissible.

Again, this is a scrivener's error. Our finding in *Gaffin II* at ¶ 78 should

have concluded that "the trial court improperly found that the statements

made in *Vaughn's,* Bowling's, and Malott's affidavits were inadmissible * * *." (Emphasis added.)

{¶47} Turning to Appellant's argument under the third assignment of error in the current appeal, Appellant cites the transcript of the evidentiary hearing at pages 8, 18, 47-50, 71, 97-98, and 159-166. The citations to these pages reference the following proposed witnesses: Braxton Gaffin, Tyler Cantrell, Mike Decker, and Officer Malott. We discuss these separately.

a. <u>Braxton Gaffin</u>

{¶48} The citations to the transcript at pages 8 and 159-166 concern the testimony and proffered testimony with regard to Appellant's son, Braxton Gaffin. Braxton testified he gave Attorney Haslam, his father's trial counsel, a flash drive and DVD containing photos and a video of R.A. with Mr. Gaffin. At the end of the evidentiary hearing, Appellant's counsel called Braxton Gafffin to provide a proffer. When Braxton Gaffin was called, the State objected as "going outside of the Fourth District's opinion." The trial court agreed and sustained the State's objection. In the May 4, 2020 decision, the trial court found: "[T]he testimony of one witness, Braxton Gaffin, was excluded by the court based upon its prior ruling on the postconviction relief petition and the appellate court's decision."

{¶49} We agree. We find the trial court did not abuse its discretion in excluding Braxton Gaffin's testimony. Our discussion in *Gaffin II* regarding the exclusion of certain witnesses did not include any discussion regarding Braxton Gaffin. Braxton Gaffin's testimony was not raised as an issue in *Gaffin II* and is now barred by the doctrine of res judicata. In *Gaffin II,* at ¶ 78, we found the trial court erred in excluding the statements made in Decker's, (should have said Vaughn's), Bowling's, and Malott's affidavits. Our remand at ¶ 90 to conduct an evidentiary hearing consistent with this opinion could not be reasonably read to have instructed the court to consider any affidavit or testimony of Braxton Gaffin. Any argument with regard to Braxton Gaffin's proposed testimony is appropriately barred by res judicata and we need not consider it.

b. Tyler Cantrell

{¶50} Concerning Attorney Cantrell's testimony, Appellant also cites to the transcript of the evidentiary hearing at pages 18, 47-50. Cantrell also testified to receiving a video showing R.A. on an overnight hunting trip with Mr. Gaffin after the alleged sexual assaults. The video evidence was also proffered at pages 47-50.

{¶51} Attorney Cantrell represented Appellant in his divorce from

R.A.'s mother.  The trial court refused to allow Mr. Cantrell to testify that, contrary to the trial testimony of R.A.'s mother, she never alleged any acts of domestic violence or sexual assault during the divorce proceedings. Appellant asserts that if this information was used only to cross-examine R.A.'s mother, it would have impeached her credibility on a critical issue in the case.

{¶52} In *Gaffin II*, this court discussed the proposed testimony from Attorney Cantrell at ¶ 52.  In his affidavit, Cantrell had averred that he reviewed a video of R.A. in a tree stand sleeping; that he was led to believe the video was recorded on a trip approved by Brianna and after the alleged assaults were committed.  According to Cantrell, the video demonstrated how comfortable R.A. was being alone with Appellant and how comfortable R.A.'s mother was with allowing it.  The trial court found Cantrell's statements inadmissible because they were based upon statements of others that were clearly hearsay.  In *Gaffin II*, this court agreed.  *Id*. at     ¶ 54.

{¶53} Appellant pursues a different argument in this appeal. Appellant argues the trial court refused to allow Mr. Cantrell to testify that contrary to the trial testimony of R.A.'s mother, she never alleged any acts of domestic violence or sexual assault during the divorce proceedings.

Appellant contends this information would have impeached R.A.'s mother on a critical issue.

{¶54} Our review indicates however that while Appellant alluded to this potential testimony in his own affidavit attached to his postconviction petition at ¶ 27, the issue regarding the absence of allegations of domestic violence or sexual assault being asserted in the divorce proceedings was not raised in *Gaffin II*, as it obviously was known to Appellant and could have been raised in the prior appeal. As we noted in *Gaffin II* and herein, res judicata applies to proceedings involving postconviction relief. *Id*. at ¶ 24, citing *State v. Szefck*, 77 Ohio St. 3d 93, 95, 671 N.E. 2d 233 (1996). Thus, res judicata prevents us from considering Attorney Cantrell's proposed testimony on this issue herein.

c. Mike Decker

{¶55} Appellant's reference to page 71 of the evidentiary hearing transcript concerns the testimony of Mike Decker. Here, despite our confusing language at ¶ 78 in *Gaffin* II, we previously had found at ¶61:

> Extrinsic evidence that serves no purpose other than to attack the credibility of a witness is inadmissible under Evid.R. 608(B) and Evid.R. 613(C). Therefore, we find that the trial court properly found that Decker's statement about R.A.'s mother's drinking habits was inadmissible under Evid.R. 608(B). Regarding Decker's statement about the hunting trip, we find that the trial court did not

abuse its discretion in finding this portion of Decker's affidavit inadmissible for being remote.

{¶56} Again, while it is unfortunate that our language in *Gaffin II* at ¶ 78 caused confusion, our language previously at ¶ 61 clearly analyzed Mr. Decker's testimony and found that the trial court properly excluded it. As with Attorney Cantrell's testimony, any issue with regard to Mr. Decker's proffered testimony at the evidentiary hearing is now barred by res judicata in this appeal.

d.  Officer Malott

{¶57} Finally, the reference to pages 97-98 of the evidentiary hearing transcript relates to the testimony of Officer Malott, formerly of the Manchester Police Department in Adams County. At the evidentiary hearing, Officer Malott testified to an incident in 2012 where R.A.'s mother said she would do "whatever it took to get Mr. Gaffin arrested." While responding to the same incident, according to Officer Malott, R.A. said he wanted to go with Mr. Gaffin, who was in the process of leaving the home. The Fourth District found this testimony admissible to impeach the credibility of both R.A. and his mother. *Gaffin II* at ¶ 74.

{¶58} Appellant asserts that at the evidentiary hearing, the trial court prevented him from developing this testimony and improperly discounted it

because Officer Malott also admitted abuse victims could still have

attachment to their alleged abuser.

{¶59} After hearing the proposed testimony at the evidentiary

hearing, in the May 4, 2020 decision, the trial court found as follows:

> [T]he testimony of Jason Malott that in August of 2012
> Brianna told him that she would do anything to get
> Defendant arrested because of a dispute over property is
> of little import. This incident occurred prior to the
> Defendant's assault of [R.A.] on Thanksgiving Day of
> 2012. * * * This was over two year prior to the disclosure
> of the sexual abuse by R.A. and there is no testimony that
> this disclosure was tied in any way to the earlier
> statement about having Defendant arrested.  If Brianna
> was determined to have the Defendant arrested in August
> of 2012, she had ample opportunity to do so on
> Thanksgiving Day * * *.  R.A.'s disclosure of sexual
> abuse occurred in February of 2015. * * * The Defendant
> provided no evidence in the evidentiary hearing that
> Brianna had been continuously making this threat. * * *
> The testimony of such a remote comment would not have
> changed the outcome of this case.

{¶60} Furthermore, in the May 4, 2020 decision, the trial

court found:

> Michael Decker, Jason Malott, and Jeff Bowling's
> testimony would have been that R.A. did not act afraid of
> the Defendant when they observed him.  It is important to
> remember that the sexual assaults occurred in May and
> December of 2008 when R.A. was six years of age. * * *
> Had the testimony of Decker, Vaugh, Malott and
> Bowling been presented by trial counsel, it actually could
> have strengthened the state's case because of the
> testimony of Dr. Connor regarding child accommodation
> syndrome and the behavior of child victims towards their

abuser showing connection or affection for their [sic] them despite being victimized. As noted there is no evidence before the Court that the Defendant's trial counsel's decision not to call these witnesses was not a sound trial strategy as trial counsel was not called as a witness at the evidentiary hearing. * * * The testimony of Jimmy Vaughn, Michael Decker, Jason Malott and Jeff Bowling about the behavior of R.A. could actually have strengthened the state's case because it was exactly what Dr. Connor described in his testimony. Further, there was already evidence in the trial record * * * that R.A. continued to do things with the Defendant after the assaults. Their testimony on this issue would have been cumulative.

{¶61} Our review of the May 4, 2020 entry also reveals the trial court's observation that Officer Malott had no copy of his report about the incident. In the evidentiary hearing, the trial court was within its discretion to determine the credibility of Officer Malott's testimony. Also, it appears that the trial court allowed Appellant to develop the testimony of Officer Malott but ultimately found the testimony to be remote, irrelevant, or cumulative. Furthermore, the trial court analyzed Officer Malott's testimony in the context of possible reasonable trial court strategy and found it was sound trial strategy not to call a witness that would have strengthened the State's expert witness.

{¶62} The trial court heard testimony from Officer Malott, analyzed it, and discounted it for legitimate and articulable reasons. The trial court further analyzed the evidence in light of its effect on Appellant's ineffective

assistance claim, finding that it was reasonable trial strategy to exclude

testimony that would corroborate that of a State's witness and that any

impeachment value as pertained to Brianna Wisecup would not have

changed the outcome of the trial.  The trial court's ruling was not arbitrary.

We find the trial court did not abuse its discretion with regard to the

development of Officer Malott's testimony.

{¶63} For the foregoing reasons, we find no merit to Appellant's third

assignment of error.  Officer Malott's testimony was properly considered.

The doctrine of res judicata applies to bar our review of the proffered

testimony of Braxton Gaffin, Tyler Cantrell, and Mike Decker.

Accordingly, the third assignment of error is overruled.

4.  <u>Assignment of Error Four:  Did the trial court fail to
    review Appellant's petition and the witnesses'
    testimony objectively?</u>

{¶64} " ' "Judicial bias has been described as a hostile feeling or spirit

of ill will or undue friendship or favoritism toward one of the litigants or his

attorney, with the formation of a fixed anticipatory judgment on the part of

the judge, as contradistinguished from an open state of mind which will be

governed by the law and the facts." ' "  *Citibank v. Hine,* 2019-Ohio-464,

130 N.E.3d 924, at ¶ 124 (4th Dist.), quoting *State v. Gerald*, 4th Dist.

Scioto No. 12CA3519, 2014-Ohio-3629, at ¶ 51, quoting *State ex rel. Pratt*

*v. Weygandt,* 164 Ohio St. 463, 132 N.E.2d 191 (1956), paragraph four of the syllabus. In *Liteky v. United States,* 510 U.S. 540, 555, 114 S.Ct. 1147 (1994), the Supreme Court held that "opinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings, or of prior proceedings, do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible. Thus, judicial remarks during the course of a trial that are critical or disapproving of, or even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge." On the other hand, " '[t]hey may *do* so [support a bias challenge] if they reveal an opinion that derives from an extrajudicial source; and they *will* do so if they reveal such a high degree of favoritism or antagonism as to make fair judgment impossible.' " (Emphasis sic.) *Id.* *Culp v. Olukoga,* 2013-Ohio-5211, 3 N.E.3d 724 (4th Dist.), at ¶ 55; quoting *State v. Dean,* 127 Ohio St.3d 140, 2010-Ohio-5070, 937 N.E.2d 97, ¶¶ 47-48. Further, as we noted in *Culp* at ¶ 55:

> A trial judge is presumed not to be biased or prejudiced, and the party alleging bias or prejudice must set forth evidence to overcome the presumption of integrity. *Corradi v. Emmco Corp.* (Feb. 15, 1996), 8th Dist. Cuyahoga No. 67407, 1996 WL 65822 [at 3] citing *State v. Wagner*, 80 Ohio App.3d 88, 93, 608 N.E.2d 852 (12th Dist. 1992); citing *State v. Richard,* 8th Dist. Cuyahoga No. 61524, 1991 WL 261331 (Dec. 5, 1991). "Bias

against a party is difficult to question unless the judge specifically verbalizes personal bias or prejudice toward a party. *See In re Adoption of Reams,* 52 Ohio App.3d 52, 59, 557 N.E.2d 159 (10th Dist. 1989)." *Frank Novak & Sons, Inc. v. Brantley, Inc.,* 8th Dist. Cuyahoga No. 77823, 2001 WL 303716 (Mar. 29, 2001) [.]

*See Hine, supra,* at ¶ 125.

{¶65} Under the final assignment of error, Appellant contends that the trial court's demeanor during all phases of presenting his petition, as well as the tone in the court's decisions suggest an unfavorable predisposition indicating an inability to impartially determine the facts. Appellant points to the court's comments regarding witnesses' credibility, and particularly that of Officer Bowling, and argues that the trial court wrongly "took it upon itself" to judge credibility of the witnesses at the hearing. Appellant concludes that the trial court's comments demonstrated bias and a predetermined point of view which clouded the court's ability to objectively apply the law, thus compromising the integrity of the proceedings.

{¶66} As set forth above at ¶ 39, the trial court was well within its discretion to consider the credibility of the witnesses who testified at the evidentiary hearing. Again, we will review separately Appellant's arguments and the proposed testimony of the witnesses, our mandate from *Gaffin II,* and the trial court's rulings.

a.  Witness Cantrell

{¶67} As discussed earlier in this opinion, the issue of Attorney Cantrell's testimony was considered by this court in *Gaffin II*. Any argument raised with regard to his testimony in this appeal is now barred by res judicata.

b. Witness Vaughn

{¶68} Appellant asserts that this court held Mr. Vaughn's testimony would have contested the credibility of R.A. and his mother as to what happened on Thanksgiving 2012. The trial court disagreed, stating his testimony was not impeaching. It further discounted its relevance by saying Mr. Vaughn's testimony was cumulative.

{¶69} In *Gaffin II,* we considered Mr. Vaughn's affidavit, in which he averred that in 2012 he had Thanksgiving dinner with Gaffin and R.A., and according to Vaughn, Brianna was "too drunk to join them." The trial court previously found this testimony inadmissible under Evid.R. 608(B). This court disagreed, finding that Evid.R. 616(B) permitted attacking the credibility of testimony through evidence of a witness's intoxication at the time of the matter which the witness seeks to testify. *Id*. at ¶ 57. We held: "Vaughn could have been called to contest R.A.'s mother's ability to remember the events of that day." *Id*. at ¶ 58. Therefore, on remand, the

trial court's mandate was to develop this possible testimony.  Our review

demonstrates Appellant was allowed to do so.

{¶70} In the May 4, 2020 decision, the trial court wrote:

Mr. Vaughn had been invited to spend Thanksgiving with Defendant and to go hunting.  He testified that he arrived at the house in the afternoon. * * * He testified that Brianna did not eat Thanksgiving dinner with them and that he observed her stumble on her way to the bathroom and then saw her passed out in the bathroom which caused him to conclude that she was intoxicated.

The Defendant asserts that this testimony impeaches the testimony of Brianna * * * as to what occurred on that weekend.  At the trial, Brianna testified that while she was cooking on Thanksgiving Day of 2012, that the Defendant asked her to have R.A. get some things out of their Suburban.  R.A. was asleep so she woke him to do that.  After R.A. came back into the house and went to his room, she saw Defendant grab R.A. by the throat and carry him out of the house. * * * The testimony of Mr. Vaughn did not contradict the testimony of Brianna Wisecup as to what had happened since he did not arrive until the afternoon.  His testimony simply showed that he did not observe any violence by the Defendant * * *. The testimony that Brianna was intoxicated later that afternoon does not impeach or contradict her testimony as there is no indication that she was drinking or intoxicated when the Defendant grabbed R.A by the throat before the arrival of Mr. Vaughn.

{¶71} Having heard the fully developed testimony, the trial court

found that Mr. Vaughn was not present until later in the afternoon so his

testimony did not "actually impeach the testimony of either Brianna or R.A."

This ruling is not inconsistent with our finding that Vaughn's testimony

would be admissible if, pursuant to Evid.R. 616(B), it related to the witness's intoxication *at the time of the matter which the witness seeks to testify.* (Emphasis added.) *Gaffin II*, at ¶ 57. (Internal citations omitted.) We fail to see how the trial court's ruling is suggestive of judicial bias.

c. Witness Decker

{¶72} Again, in this appeal, any issues with regard to Mr. Decker's testimony are barred by the doctrine of res judicata.

d. Witness Malott

{¶73} As discussed above in the third assignment of error, the trial court did not abuse its discretion with regard to its ultimate rulings on Officer Malott's testimony. The trial court's ruling was well-reasoned and was not an abuse of discretion. Therefore, we do not view the trial court's ruling as indicative of judicial bias.

e. Witness England

{¶74} Appellant argues that at the evidentiary hearing, Mr. England, a former investigator with the ACCS, recounted in great detail the absence of any evidence to substantiate the 2008 allegation of sexual abuse against Mr. Gaffin. Appellant contends that the trial court skimmed over the most important details (R.A.'s multiple denials of any abuse, his mother's denial of any violence in the home, his mother's accusation against her own family

for making this claim to break up her and Mr. Gaffin, and R.A.'s identification of Mr. Gaffin as someone to whom he could report inappropriate conduct) which could have been used to impeach both R.A. and his mother. Appellant concludes the trial court's findings regarding Mr. England is further evidence of judicial bias.

{¶75} However, our review of *Gaffin II* at ¶ 44 reveals that the issue of Mr. England's possible impeachment testimony was not raised in *Gaffin II* when it should and could have been. Our remand is specific. Appellant did not raise this argument in *Gaffin II,* and res judicata prevents us from considering it now.

f.  Witness Bowling

{¶76} Like Officer Malott, Officer Bowling testified he responded in 2014 to a call from R.A.'s mother that R.A. was missing. Officer Bowling found R.A. with Mr. Gaffin. When Officer Bowling told R.A. that he had to go home, R.A. said he wanted to stay with Mr. Gaffin. Appellant asserts that, given R.A.'s trial testimony that he was always afraid of Mr. Gaffin, and that the state used this to explain why R.A. delayed reporting the alleged assaults, the Fourth District found this testimony "does more than attack R.A.'s testimony."

{¶77} In *Gaffin II,* we found that "[b]ecause R.A.'s delayed reporting is a fact of consequence to the action, the subject matter of Bowling's statement * * * would have been admissible under Evid.R. 613(C) and Evid.R. 613(B)(2)(a)." *Id*. at ¶ 70. We further found that "no rational trial court could find this evidence remote in light of the victim's delayed reporting." *Id*. at ¶ 71. Appellant contends that this time the trial court discounted the witness's testimony because it was not credible.

{¶78} In the trial court's May 4, 2020 decision, the court wrote:

> During cross examination, Officer Bowling admitted that he had made postings on his Facebook page that were critical of the Adams County justice system and supportive of Defendant. These comments strongly suggest that he has a strong bias in favor of the Defendant and against Brianna Wisecup. His demeanor during his testimony on cross-examination was very defensive and evasive particularly as to his postings about the case on Facebook. Consequently, the Court does not find his testimony to be credible.

{¶79} Once again, the trial court was in the best position to determine the credibility of the witnesses. The court found Officer Bowling's credibility to be lacking. Credibility determinations being within the province of the trial court, again we fail to find the court exhibited judicial bias with regard to this ruling.

{¶80} Judges' rulings of law are legal issues, subject to appeal, and are not by themselves evidence of bias or prejudice. *See Hine, supra,* at

¶ 129, citing *Cooke v. United Dairy Farmers*, 10th Dist. Franklin No. 05-AP1307, 2006-Ohio- 4365, at ¶ 45, citing *Okocha v. Fehrenbacher,* 101 Ohio App.3d 309, 322, 655 N.E.2d 744 (8th Dist.1995).  Judge Coss's rulings at the evidentiary hearing do not constitute evidence that the trial court was prejudiced or biased.

{¶81} Moreover, the Supreme Court of Ohio has held that an appellate court has no jurisdiction to vacate a trial court's judgment based on a claim of judicial bias.  *See Hine, supra,* at ¶ 126; *Cooke, supra,* citing *Beer v. Griffith,* 54 Ohio St.2d 440, 441-442, 377 N.E.2d 775 (1978).  The remedy for suspected judicial bias is to file an affidavit of prejudice with the clerk of the Supreme Court of Ohio.  *See Polivka v. Cox,* 10th Dist. Franklin No. 02AP-1364, 2003-Ohio-4371.  R.C. 2701.03 "provides the exclusive means by which a litigant may claim that a common pleas judge is biased and prejudiced."  *See Jones v. Billingham,* 105 Ohio App.3d 8, 11, 663 N.E.2d 657 (2nd Dist.1995).  Only the Chief Justice of the Supreme Court of Ohio or his designee has the authority to determine a claim that a common pleas court judge is biased or prejudiced.  *See Beer, supra*, 377 N.E.2d 775.  Thus, an appellate court is without authority to pass upon issues of disqualification or to void a judgment on the basis that a judge should be disqualified for bias or prejudice.  *Id.*; *State v. Ramos,* 88 Ohio App.3d 394,

398, 623 N.E.2d 1336 (11th Dist.1993). Accordingly, we find no merit to Appellant's fourth assignment of error and it is hereby overruled.

CONCLUSION

{¶82} Based on the foregoing, we find no merit to Appellant's four assignments of error. Despite the confusing language in *Gaffin II,* we find it incredible that Appellant would seriously argue that the law of the case doctrine left the trial court no discretion to rule on the affidavits and testimony proffered and admitted into evidence at the remand hearing. We further find the trial court did not abuse its discretion when it conducted the evidentiary hearing and made its well-reasoned evidentiary rulings. We also find that Appellant failed to avail himself of the proper statutory procedure for challenging a judge on the basis of judicial bias. Even so, having reviewed the evidentiary hearing transcript, we do not view the trial court's rulings as suggestive of bias. Appellant's assignments of errors are without merit and are hereby overruled. The judgment of the trial court is affirmed.

**JUDGMENT AFFIRMED.**

**JUDGMENT ENTRY**

It is ordered that the JUDGMENT BE AFFIRMED and costs be assessed to Appellant.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Adams County Common Pleas Court to carry this judgment into execution.

IF A STAY OF EXECUTION OF SENTENCE AND RELEASE UPON BAIL HAS BEEN PREVIOUSLY GRANTED BY THE TRIAL COURT OR THIS COURT, it is temporarily continued for a period not to exceed 60 days upon the bail previously posted. The purpose of a continued stay is to allow Appellant to file with the Supreme Court of Ohio an application for a stay during the pendency of proceedings in that court. If a stay is continued by this entry, it will terminate at the earlier of the expiration of the 60-day period, or the failure of the Appellant to file a notice of appeal with the Supreme Court of Ohio in the 45-day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Supreme Court of Ohio. Additionally, if the Supreme Court of Ohio dismisses the appeal prior to expiration of 60 days, the stay will terminate as of the date of such dismissal.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Abele, J. & Hess, J., concur in Judgment and Opinion.

For the Court,

_____

Jason P. Smith
Presiding Judge

**NOTICE TO COUNSEL**

**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**